Good morning, Your Honors. Joanne Sciamone on behalf of the Appellate Shawn McCormack Maine Police Department. I'd like to reserve three minutes for rebuttal argument and I will keep my eye on the clock. Our opening brief raises several evidentiary issues and the sentencing challenge, but this morning I plan to focus on the lack of the jurisdictional nexus in the kidnapping charge. According to the kidnapping count, the evidence simply does not establish the required jurisdictional element. The jurisdictional element in the statute requires that the defendant traveled in interstate or foreign commerce in committing or in furtherance of the commission of the offense, or that the defendant used the mail or any means, facility, instrumentality, in committing or in furtherance of the commission of the offense. And so the government has posited to evidentiary that they need that jurisdictional nexus based on two pieces of evidence. The first is that the defendant lived in Colorado, but the kidnapping occurred in California, and that he came from one state to another. And then the second piece of evidence that they argue is that the father of the victim testified that, in a typical, for a typical visit, his friend would call him a day or two ahead of time, but there was no testimony about the specific incident that's alleged that November of 2009 is the subject of count six of the kidnapping. So I'll turn to our argument about the insufficiency of both of those to meet that jurisdictional nexus. Both of those, both of the pieces of evidence that they're relying on were temporarily separate events that occurred before the kidnapping event allegedly occurred. And the DA cited no case that would stretch the evidence this far, that a defendant simply living in one state, but then going to another state, and then an event that happened solely within that state where a victim wasn't transported across state lines or there was no other federal nexus, that the defendant simply being arrested in some other state and then coming to the other state is sufficient. We've cited a number of cases, Garcia, Wesson, and Redmond, all of which from the circuit required or in which the victim was transported across either state lines or international border. The government rightly points out that the statute was amended in 2006 to include that specific defendant traveling element. But in the 10-plus years since that has happened, there is simply no case law to support their theory that the fact that the defendant lived in one state and came to another state where the event occurred, that that would be enough. And in that 11-year period, there simply isn't case law to support that theory. And I don't think that the evidence would lead a reasonable jurors into that conclusion either. You didn't challenge the instructions saying what the government must prove as to Count 6, did you? The way that this challenge was raised, Your Honor, was through a Rule 29 motion. I understand that, but I'm just trying to go through what you may have done. You didn't challenge the instructions saying what the government must prove, which was given as to Count 6. Yes, the law was accurately instructed, Your Honor. And you agree that 18 U.S.C. 1201 would allow for conviction where the defendant travels through interstate commerce or uses the mail or any means, facility, or instrumentality of interstate commerce in committing or in furthering of the commission of the offense. Do you agree with that? Yes, that's the plain language. That's the plain language. So all we're trying to determine then, is there any evidence of either of the two? Exactly. As a judge. As I understand it, the evidence is the defendant parked the vehicle in the alleyway rather than in the driveway. He did not drink alcohol, and the plan was not spur of the moment. Or? I could change. He would call a day or two before committing the arrangements, and no evidence that he announced on this that he was unannounced on the time Ben was taken. I'm sorry, I didn't hear the very last portion. Or there's no evidence that your client was unannounced on the time Ben was taken. Well, there was no evidence. You should flip that, Your Honor. There's seemingly no evidence here that a phone call was made on this occasion. The testimony given by the victim's father was that on a typical occasion, he would give him a call a day or two ahead, they were old friends, and he would come into town for work, for which he traveled. But the government listed a testimony in very specific detail about the evening and the time period leading up to. Is there any evidence that your client was there unannounced? There was not evidence he was there. Is there any evidence of that? The evidence is generally as I understood it, and I'm not trying to argue with you, but as I understood it, the general evidence was he always called a day or two before he was coming, yet then there's no evidence that he was unannounced when Ben was taken. So it would seem normal, inherent, that he called on that time. Well, Your Honor, I would make one important clarification. The evidence that he always called, the evidence was he usually called me a day or so in advance. That's from NPR 848. And so I think that that— And so the fact that you're saying usually rather than always makes a difference? I think it does make a difference, Your Honor. The government probed that line of questioning and then probed the line of questioning about the incident and what happened leading up to the incident and what they were doing on the evening of in very specific detail but never asked that question, never said, did he call you the day before? Do you remember if he called you on this occasion? What's our standard of review on this evidentiary question? Well, on the Rule 29 motion, Your Honor, it seems to know our review, but you can only reverse if no reasonable juror would have convicted on that evidence. That's a very difficult standard for you to meet, isn't it? It is, but I would still posit that there is no— that the government hasn't cited any authority that would allow the evidence, the very thin record. This would be certainly, I think, at least— this would be a stretch beyond what has ever been relied on before to support this jurisdictional nexus. So while it is a tough hill to climb, this is the reason I'm focusing on this argument today. I think it is beyond what the authority exists. The government's position is that it's a reading just directly of the statute, but we have never had evidence this thin to support the federal kidnapping jurisdictional nexus. And so, again, turning back judgment to the evidence that we went through, again, the government is relying on— I think I understand your argument. I'm not sure I agree with it, but I understand your argument. Do you want to move to another issue? Sure. I'm happy to focus on whatever the court's questions are. Otherwise, I'm happy to address any of the evidentiary issues. I think that they're actually pretty thoroughly briefed, and I'm happy to answer specific questions on any of those. The reason I'm going to concentrate on this issue is I'd like to hear from you. I'm happy to do that, and I'll address anything in response to whatever arguments are. May it please the Court. My name is Megan Richards, and I represent the United States of America. I'd like to focus on the Count 6 kidnapping charge. First, I wanted to correct something. It was not the government's position that just because the defendant lived in Colorado at the time of the kidnapping that there would be federal jurisdiction in this case. The evidence in this case showed that the defendant traveled from Colorado to California to commit this kidnapping. It's not that he just lived in Colorado at the time. It's that he actually traveled in interstate commerce to commit the crime. So I'll focus on that part of kidnapping first, and then I'll go to the phone call. They're somewhat related in that they would require the rational juror to think about what the defendant's intent was when he made the phone call and also when he moved or when he traveled from Colorado to California. And I think it's worth pointing out in this case that this was Count 6. This was the last count chronologically of the abuse that occurred in this case. This was November 6, 2009. The jury in this case convicted the defendant on the five prior counts. They found that this defendant on prior occasions had gone to the victim's house, had abused the victim, had in Count 5 removed the victim from the house, kidnapped him, and done these things to him. So it would be a reasonable inference for a judge to conclude. But let's suppose that Mr. McCormick had been in San Francisco and that he lived in Colorado, but he had been in San Francisco for a month. And he went from San Francisco and died in San Diego. Would you be able to raise the same jurisdictional nexus? No, I don't believe so. What's the break? I mean, what is the break here that says no, that I would say no jurisdictional nexus? In the scenario you just gave, I'm assuming you're picturing a defendant who is staying in the state for a long time. There would be less evidence that he concocted the plan while he was outside of the state and that he moved interstate in order to commit the crime. In this case, there's evidence that the defendant was living in Colorado. He got in his car. He drove 15 hours to the victim's house. He started drinking Red Bulls. He parked his car in the alley, and that very night he removed the victim from the house. It seems to me the question here is whether or not, maybe it's not raised this way, but whether or not this conduct could be made criminal by the Congress, or whether or not this is a state offense for which California should have brought a kid to heavy charge. I mean, that's in essence what the argument really is here, isn't it? That seems correct. And under the language of the statute, it appears that Congress did want a case like this to be a federal kidnapping charge. There are a number of statutes out there that criminalize trafficking in interstate commerce for the purpose of doing something. Yes. I think it upheld. I believe so. This is not something that I've raised for this case, but I believe so. All right. I appreciate your argument. Any other argument? Is there anything that the court has any questions about? I'd be happy to address anything the court has questions about. Well, thank you. Thank you. Judge Trotter. Judge Trotter, to address your question about the defendant traveling, I mean, this is a heavily litigated issue on federal kidnapping. The jurisdictional nexus is there has to be sufficient evidence or supporting elements of the statute. And so, as we said in our brief, I did exhaustive research to try to identify cases and the distinctions in when jurisdiction wouldn't exist. And in all of the cases I identified, and the government hasn't identified any other cases, the victim was transported. Now, the statute obviously has been amended, but as I argued, there is no case simply where under judiciary or hypothetical it simply wouldn't be upheld. And in this case, it's a very similar scenario. And then all of the conduct that's been alleged to support that jurisdictional nexus is temporally distinct and a sufficient connection wasn't made to the conduct that is the subject of the kidnapping charge. And so the federal jurisdiction, therefore, wouldn't and wasn't properly asserted in this case or there wasn't sufficient evidence. Excuse me. What is the most distinct? Well, the three cases that we cited, all of them involved the victim being transported. And the Garcia case was the minor being transported across to Mexico from California. Wesson was a truck driver who was transporting both commercial goods and a young woman at the same time across state lines. And Redmond, all of these upheld jurisdiction. And in Redmond, the defendant transported the minor across from Oregon to Utah, so multiple state lines. Let me ask another question. If, in fact, you were correct as to this Cal 6, what is the effect of that? If there is insufficient evidence, then the court would need to reverse the holding. Yes. So, as I understand, the sentence was life for count two and 360 months on all other counts, all to run concurrent? The life sentence was on counts five and six, Your Honor, and the 360-month sentence was on counts one through four. Well, I understand. So, there is one count of kidnapping, which isn't subject to your challenge. If the court adopted, well, then. And so, that is why I'm trying to see what is the effect if we were even by your argument. It doesn't seem to me that his sentence is count at all. You still have life for the other kidnapping and 360 months on all other counts. Well, we have positive other arguments that would fit. I don't buy the other arguments. The only one I buy is the one you think you have to talk about here because it's the most important. I'm trying to think what the effect is. So, well, I don't want to. I'm not conceding that the other. No, I'm not conceding. Suppose you lose on every argument except this. Then the effect would be to remove this conviction, but I guess ultimately if you don't agree with the other arguments, then it wouldn't affect the convictions on the other counts. The best thing that could happen is he could have one kidnapping count removed. If you accepted only this argument and not the other challenges that we've offered. Well, you said it was your most important. I'm trying to now say what's the effect if I have granted it. Yes, I understand, Your Honor. So, I'm happy to have to turn in the remaining time to you if you have questions. I think since we had rebuttal to what you argued, it's just that I ought to give you now the chance to talk again about everything else. I understand. So, as I indicated in my opening, I think that because those evidentiary issues are very specific and they require analysis to each of the exhibits, I think that the briefing on both sides has been incredibly thorough on those topics. All right. If there are no further questions, I'm happy to submit. Case 15-1500 is submitted. Thanks. And we'll move to case 15-16999.
judges: Fisher, Schroeder, N.R. Smith